UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Criminal No. 1:06-mj-00120-JMF-1 |
| RAYMOND F. COOKE : | |
| Defendant : | |

### MOTION TO REVIEW CONDITIONS OF PRETRIAL RELEASE

Comes now the Defendant, RAYMOND F. COOKE, by and through counsel, Richard A. Finci and the Law Offices of Houlon, Berman, Bergman, Finci & Levenstein and respectfully states as follows:

1. On March 17, 2006, a Detention Hearing was conducted before United States Magistrate Judge John Facciola in the above referenced matter. At the hearing, Judge Facciola ordered Defendant's detention pending Trial and issued a Detention Memorandum on March 20, 2006, a copy of which is attached hereto at Tab 1.

2. In the Detention Memorandum, the Court found "clear and convincing evidence that there are no conditions or combination of conditions which could reasonably assure the safety of the community." The factual basis for the Court's ruling was the Defendant's involvement in "selling large quantity of drugs." The only factors weighing against those drug quantities, according to the Court, was Defendant's proffered "lifelong ties to the D.C. area to rebut the presumption of dangerousness created by the Bail Reform Act."

3.    Pursuant to 18 U.S.C. §3142, Defendant respectfully suggests that information exists not known to the Court at the time of the hearing which rebut the presumption of dangerousness and demonstrate conditions which would reasonably assure the safety of the community.

4.    At the time of the hearing, the Court was not presented with evidence concerning Defendant's retail store located at Landmark Mall called Urban Styles with an address of 5801 Duke Street. The store employs a total of four individuals including Defendant, his 15 year old daughter and two other employees. Attached hereto at Tab 2 is page one of a lease which existed for Defendant's retail store dated February 3, 2005 which terminated by its own terms February 14, 2006, at Tab 3 a lease dated April 3, 2006, which terminates by its terms on or about April 30, 2006 (temporary lease) and at Tab 4 the first page of what would be a permanent lease for the store. The entire lease documents are available and will be provided to the Government by mail and to the Court at any hearing on this Motion.

5.    Additionally, prior to his detention, Defendant was under the care of Dr. David Pearl, a Cardiologist, who is treating Defendant for high blood pressure and an arterial blockage. He previously had an angiogram in 2004 and is being closely monitored. Defendant has recently been seen by a doctor at CTF but has not been allowed to continue on the same medications he was on prior to his incarceration and his medical condition has suffered as a result.

6. It is respectfully suggested to this Honorable Court that the Court did not base its decision on any evidence demonstrating that firearms or violence were in any way involved in Defendant's alleged drug dealing. Moreover, it is further evident that the number of alleged drug deals and the weight of the amount allegedly purchased in this case was controlled by the undercover officers. If the testimony of the officer's at the Preliminary Detention Hearing was accurate, Defendant could have been arrested after the first transaction. Thus, the quantities allegedly involved in this case should not control the Detention issue. It is respectfully suggested that if the Detention Statute had intended to require detention where more than one drug transaction is involved, it would so state.

Moreover, while Defendant has a very old criminal conviction, he has no prior record at least for the purposes of the Federal Sentencing Guidelines and will thus be treated as a first offender. In the absence of any demonstration of actual dangerousness, the mere nature of the charge in this case, it is respectfully suggested, does not outweigh the other factors and conditions which the Court can establish such as curfew, regular drug testing and similar conditions to protect the community.

7. The Magistrate had before him certain mis-information about the Defendant's residence. While it is true that the property believed to be Defendant's home when it was searched was empty, that is because the property was under renovation.

**WHEREFORE**, Defendant respectfully requests the following relief:

1. That this Honorable Court review and reconsider the denial of Pretrial Release and order of detention in the present matter.

2. Such further and additional relief as just may require.

Respectfully submitted,

---

RICHARD A. FINCI
HOULON, BERMAN, BERGMAN,
FINCI & LEVENSTEIN
7850 Walker Drive, Suite 160
Greenbelt, Maryland 20770
(301) 459-8200
e-mail: finci@houlonberman.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this _____ day of _____, 2006, a copy of the foregoing Line was mailed, postage pre-paid, to:

Martin Dee Carpenter, Esquire
United State's Attorney
for the District of Columbia
Judiciary Center
555 Fourth Street, N.W.
Washington, D.C. 20001

---

RICHARD A. FINCI

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.                                                    CR NO. 06-120 (JMF)

RAYMOND COOKE - 01,
TAMMY ODOM - 02,

　　　　Defendants.

DETENTION MEMORANDUM

This matter comes before me upon the application of the United States that the defendant be detained pending trial. After a hearing, the government's motion was granted, and this memorandum is submitted to comply with the statutory obligation that "the judicial officer shall—include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

FINDINGS OF FACT

1.　On Tuesday, March 14, 2006, at approximately 8:00 p.m., Detective Lavinia Quigley, working undercover for the Metropolitan Police Department along with Detective Allen, was in the vicinity of the 800 block of Delafield Place, N.W. in Washington, D.C. Previously, Allen had arranged by phone to meet Odom in that area and purchase 125 grams of crack cocaine for $4,000.

2.　When the police arrived at the location, Odom came out of her house and got into the officers' unmarked car. Allen gave Odom $4,000. Shortly thereafter, Cooke drove up in a burgundy Maxima with Virginia tags and stopped approximately 20

feet in front of the unmarked car.

3. Odom got out of the unmarked car and entered Cooke's car. After a few minutes, Odom got out of Cooke's car and reentered the unmarked car. Odom gave Allen a clear ziplock bag, which contained 125 grams of crack cocaine. Odom was then arrested

4. Cooke was arrested moments after he had driven away. From Cooke's car, the police seized the $4,000 in pre-marked funds. From Cooke's left coat pocket, the police seized three plastic bags. One of the bags contained crack cocaine and two of the bags contained powder cocaine. From Cooke's pants pocket, the police seized $239.

5. The activities that took place in the undercover car was audio and videotaped and Cooke's car was under electronic surveillance.

6. On six prior occasions and in the same manner described above, Odom had facilitated the sale of crack cocaine to these undercover officers. On three of those occasions, Odom had facilitated the sale of 62 grams of crack cocain and on the remaining three occasions, Odom had facilitated the sale of 125 grams of crack cocaine. On four of the six prior occasions, Cooke supplied Odom with the drugs she then sold to the undercover officers in the exact same manner as occurred on March 14, 2006.

## REASONS FOR DETENTION

An examination of the factors required to be considered by 18 U.S.C. section 3142(g) compels the conclusion that there is clear and convincing evidence that defendant's release on

2

any condition or combination of conditions will not reasonably assure the safety of the community and his detention is, therefore, appropriate.

## The Statutory Standard

Defendants who are charged with an offense for which a term of imprisonment of 10 years is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951 *et seq.*), or the Maritime Drug Law Enforcement Act (46 U.S.C. §§ 1901 *et seq.*) are eligible for pretrial detention. 18 U.S.C. § 3142(f)(1)(C). If there is probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of 10 years or more is prescribed in those three statutes, it is presumed that there is no condition or combination of conditions which will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e). In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer is to consider:

1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

2. The weight of the evidence;

3. The history and characteristics of the person, including

    a. His character, physical and mental condition, family ties, employment, financial resources, length of residence in the community and community ties;

    b. Past conduct, history relating to drug or alcohol abuse;

    c. Criminal history;

3

  d. Record concerning appearance at court proceedings;

  e. Whether, at the time of the current offense or arrest, the person was on probation, parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State or local law;

4. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142.

An examination of these factors compels the conclusion that there is clear and convincing evidence that defendant's release on any condition or combination of conditions will not reasonably assure the safety of the community and his detention is, therefore, appropriate.

**The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.** The offense charged, that these two defendants were involved in the wholesale distribution of large quantities of crack cocaine is clearly one involving a narcotic drug.

**Defendant's character, physical and mental condition, family ties, employment, financial resources, and length of residence in the community.**

Odom is a lifelong resident of the District of Columbia. She is divorced and has three children, none of whom live with her. Odom completed two years of college education.

Cooke is a lifelong resident of the District of Columbia. He is single and has three children, one of whom is living with him.

**The weight of the evidence.** The weight of the government's case is overwhelming. Not only were the phone calls from the undercover officer to Odom tape recorded but the transactions themselves were video and audiotaped.

4

**History relating to drug or alcohol abuse.** No drug use was indicated for Cooke and no information was available as to Odom.

**Record concerning appearance at court proceedings and prior criminal record.**

Odom has no prior convictions.

In December of 1985, Cooke was convicted of simple assault and sentenced to 180 days of confinement (suspended) and one year of supervised probation. In September of 1986, Cooke was convicted of theft in Maryland and sentenced to 30 days confinement and one year of probation.

**Whether on probation or parole at the time of the present offense.** Neither defendant was on probation or parole at the time of the present offense.

## CONCLUSION

A weighing of all the pertinent facts compels the conclusion that the defendants should be detained pending trial. On five occasions, undercover officers audio and videotaped the sale of large amounts of crack cocaine by these two defendants, working jointly. They clearly are in the business of selling large quantities of drugs. They proffered little more than their lifelong ties to the D.C. area to rebut the presumption of their dangerousness created by the Bail Reform Act. I find by clear and convincing evidence that there are no conditions or combination of conditions I could set which would reasonably assure the safety of the community. I will, therefore, order the defendants detained without bond pending trial.

                                                                                                                  _____
                                                                                                                   **JOHN M. FACCIOLA**
                                                                                                                   UNITED STATES MAGISTRATE JUDGE

**March 17, 2006**

Urbanstyles                                                                                    Landmark Mall

 General Growth Properties, Inc.

# License Agreement
Approval date: 02/03/05

Mall Name: Landmark Mall
Agent: Sherri Miller        Date Prepared: 02/03/05
Deal Type: Inline; 60240; SPIU

Space #: E0172 - 951 s.f.
Agreement Type: Relo\Expansion
Project Number: 00058867-200523

### LICENSE AGREEMENT (Revised 11/04)
This License Agreement ("License") provides the terms and conditions between Licensor and Licensee for conducting business at the Shopping Center indicated below  Nothing contained in this License shall be considered as in any way constituting a partnership between Licensor and Licensee.  Licensee agrees that it does not and shall not claim at any time any leasehold interest, nor a license coupled with an interest, nor any other interest or estate of any kind or extent whatsoever in any part of the Shopping Center.

### SHOPPING CENTER INFORMATION
Landmark Mall
5801 Duke Street Suite D108                    Phone: 703-354-8405
Alexandria, VA  22304                           Fax: 703-256-8503

### LICENSOR NAME AND NOTICE ADDRESS
General Growth Management, inc. Agent for Landmark Mall L.L.C. d/b/a Landmark Mall
5801 Duke Street Suite D108                    Phone: 703-354-8405
Alexandria, VA  22304                           Fax: 703-256-8503

### LICENSEE NAME AND NOTICE ADDRESS
Trade Name: Urbanstyles

Company: LAB Sportswear
  Contact: Raymond Cooke                       Phone 1: (202)529-8551
    3042 Monroe St. NE                         Phone 2: (301)526-4873 ext. cell
    Washington, DC  20018                      Fax: (202)529-0762
Email: lgear@aol.com                           FEIN/SSN: 52-2100020

The undersigned hereby grants Licensor permission to confirm that the Social Security Number (SSN) provided is 1) a valid SSN assigned to the person offering it, and; 2) matches the address provided by the person offering the SSN.

### GUARANTOR NAME AND NOTICE ADDRESS
Company: LAB Sportswear
  Contact: Raymond Cooke                       Phone 1: (202)529-8551
    3042 Monroe St. NE                         Phone 2: (301)526-4873 ext. cell
    Washington, DC  20018                      Fax: (202)529-0762
Email: lgear@aol.com                           FEIN/SSN: 52-2100020

### Payment Address
Any fees for payments made by Licensee shall be made payable to above Licensor.
In consideration of the mutual promises and obligations contained in this License, the parties agree:

1. Licensor grants to Licensee a non-exclusive License. which is non-transferable by Licensee, freely transferable by Licensor, and revocable at will and without cause by only Licensor, for the sole purpose of conducting the following business activities:

    The retail sale of mens and womens sportswear and accessories to include socks, hats or caps, sunglasses, watches and mixed cds-but not to exceed more than 5% of stock.

    ("the Use") and for no other activity or purpose whatsoever in a location (the "Assigned Location") shown on Exhibit "A" attached to and made part of this License

2. Licensee shall be permitted to conduct the Use in the Assigned Location starting upon the earlier of (a) or (b) 02/15/05 (the "Commencement Date") and ending 02/14/06 (the "Expiration Date"), unless this License is revoked earlier by Licensor. Licensor may revoke this License at will and without cause, effective immediately upon personal delivery of written notice of revocation to Licensee or Licensee's employees or agents at the Assigned Location or by US Mail sent Certified, return receipt requested, to Licensee's Notice Address above  The License shall absolutely end on the giving of such notice

3. Licensee shall not change the Trade Name, and Licensee represents that it has the right to use the Trade Name

4. Licensee shall pay Licensor for this License, without notice or demand, at the Shopping Center address shown above, or such other location as Licensor may specify, by certified check, or money order or other manner approved by Licensor

### Space Comments

Urbanstyles                        Landmark Mall


General Growth Properties, Inc.

# License Agreement

Approval date: 04/03/06
Report Sales: Yes

Mall Name: **Landmark Mall**  
Space #: **E0172 - 951 s.f.**  
Agent: **Sherri Miller**   Date Prepared: **04/03/06**  
Agreement Type: **Renew**  
Deal Type: **Inline; 60240; SPIU**  
Project Number: **00106668-200643**

## LICENSE AGREEMENT  (Revised 11/04)

This License Agreement ("License") provides the terms and conditions between Licensor and Licensee for conducting business at the Shopping Center indicated below. Nothing contained in this License shall be considered as in any way constituting a partnership between Licensor and Licensee. Licensee agrees that it does not and shall not claim at any time any leasehold interest, nor a license coupled with an interest, nor any other interest or estate of any kind or extent whatsoever in any part of the Shopping Center.

### SHOPPING CENTER INFORMATION

**Landmark Mall**

5801 Duke Street Suite D108  
Alexandria, VA  22304

Phone: 703-354-8405  
Fax: 703-256-8503

### LICENSOR NAME AND NOTICE ADDRESS

General Growth Management, inc. Agent for Landmark Mall L.L.C. d/b/a Landmark Mall

5801 Duke Street Suite D108  
Alexandria, VA  22304

Phone: 703-354-8405  
Fax: 703-256-8503

### LICENSEE NAME AND NOTICE ADDRESS

Trade Name: Urbanstyles

Company: LAB Sportswear  
  Contact: Raymond Cooke  
    3042 Monroe St. NE  
    Washington, DC  20018

Phone 1: (202)529-8551  
Phone 2: (301)526-4873 ext. cell  
Fax: (202)529-0762

Email: lgear@aol.com  
FEIN/SSN: 52-2100020

The undersigned hereby grants Licensor permission to confirm that the Social Security Number (SSN) provided is 1) a valid SSN assigned to the person offering it, and; 2) matches the address provided by the person offering the SSN.

### GUARANTOR NAME AND NOTICE ADDRESS

Company: LAB Sportswear  
  Contact: Raymond Cooke  
    3042 Monroe St. NE  
    Washington, DC  20018

Phone 1: (202)529-8551  
Phone 2: (301)526-4873 ext. cell  
Fax: (202)529-0762

Email: lgear@aol.com  
FEIN/SSN: 52-2100020

### Payment Address

Any fees for payments made by Licensee shall be made payable to above Licensor.

In consideration of the mutual promises and obligations contained in this License, the parties agree:

1. Licensor grants to Licensee a non-exclusive License, which is non-transferable by Licensee, freely transferable by Licensor, and revocable at will and without cause by only Licensor, for the sole purpose of conducting the following business activities:

   **The retail sale of mens and womens sportswear and accessories to include socks, hats or caps, sunglasses, watches and mixed cds-but not to exceed more than 5% of stock.**

   ("the Use") and for no other activity or purpose whatsoever in a location (the "Assigned Location") shown on Exhibit "A" attached to and made part of this License.

2. Licensee shall be permitted to conduct the Use in the Assigned Location starting upon the earlier of (a) or (b) **04/01/06** (the "Commencement Date") and ending **04/30/06** (the "Expiration Date"), unless this License is revoked earlier by Licensor. Licensor may revoke this License at will and without cause, effective immediately upon personal delivery of written notice of revocation to Licensee or Licensee's employees or agents at the Assigned Location or by US Mail sent Certified, return receipt requested, to Licensee's Notice Address above. The License shall absolutely end on the giving of such notice.

3. Licensee shall not change the Trade Name, and Licensee represents that it has the right to use the Trade Name.

4. Licensee shall pay Licensor for this License, without notice or demand, at the Shopping Center address shown above, or such other location as Licensor may specify, by certified check, or money order or other manner approved by Licensor

### Space Comments

**GGP** General Growth Properties, Inc.

# License Agreement

| | |
|---|---|
| Mall Name: **Landmark Mall** | Approval date: **04/03/06** |
| | Report Sales: **Yes** |
| | Space #: **E0172 - 951 s.f.** |
| Agent: **Sherri Miller**   Date Prepared: **04/03/06** | Agreement Type: **Renew** |
| Deal Type: **Inline; 60240; SPIU** | Project Number: **00106668-200643** |

## LICENSE AGREEMENT (Revised 11/04)

This License Agreement ("License") provides the terms and conditions between Licensor and Licensee for conducting business at the Shopping Center indicated below. Nothing contained in this License shall be considered as in any way constituting a partnership between Licensor and Licensee. Licensee agrees that it does not and shall not claim at any time any leasehold interest, nor a license coupled with an interest, nor any other interest or estate of any kind or extent whatsoever in any part of the Shopping Center.

### SHOPPING CENTER INFORMATION

**Landmark Mall**

5801 Duke Street Suite D108
Alexandria, VA 22304

Phone: 703-354-8405
Fax: 703-256-8503

### LICENSOR NAME AND NOTICE ADDRESS

**General Growth Management, inc. Agent for Landmark Mall L.L.C. d/b/a Landmark Mall**

5801 Duke Street Suite D108
Alexandria, VA 22304

Phone: 703-354-8405
Fax: 703-256-8503

### LICENSEE NAME AND NOTICE ADDRESS

Trade Name: **Urbanstyles**

Company: **LAB Sportswear**
Contact: **Raymond Cooke**
3042 Monroe St. NE
Washington, DC 20018

Phone 1: **(202)529-8551**
Phone 2: **(301)526-4873 ext. cell**
Fax: **(202)529-0762**

Email: **lgear@aol.com**

FEIN/SSN: **52-2100020**

The undersigned hereby grants Licensor permission to confirm that the Social Security Number (SSN) provided is 1) a valid SSN assigned to the person offering it, and; 2) matches the address provided by the person offering the SSN.

### GUARANTOR NAME AND NOTICE ADDRESS

Company: **LAB Sportswear**
Contact: **Raymond Cooke**
3042 Monroe St. NE
Washington, DC 20018

Phone 1: **(202)529-8551**
Phone 2: **(301)526-4873 ext. cell**
Fax: **(202)529-0762**

Email: **lgear@aol.com**

FEIN/SSN: **52-2100020**

### Payment Address

Any fees for payments made by Licensee shall be made payable to above Licensor.
In consideration of the mutual promises and obligations contained in this License, the parties agree:

1. Licensor grants to Licensee a non-exclusive License, which is non-transferable by Licensee, freely transferable by Licensor, and revocable at will and without cause by only Licensor, for the sole purpose of conducting the following business activities:

   **The retail sale of mens and womens sportswear and accessories to include socks, hats or caps, sunglasses, watches and mixed cds-but not to exceed more than 5% of stock.**

   ("the Use") and for no other activity or purpose whatsoever in a location (the "Assigned Location") shown on Exhibit "A" attached to and made part of this License.

2. Licensee shall be permitted to conduct the Use in the Assigned Location starting upon the earlier of (a) or (b) **04/01/06** (the "Commencement Date") and ending **04/30/06** (the "Expiration Date"), unless this License is revoked earlier by Licensor. Licensor may revoke this License at will and without cause, effective immediately upon personal delivery of written notice of revocation to Licensee or Licensee's employees or agents at the Assigned Location or by US Mail sent Certified, return receipt requested, to Licensee's Notice Address above. The License shall absolutely end on the giving of such notice.

3. Licensee shall not change the Trade Name, and Licensee represents that it has the right to use the Trade Name.

4. Licensee shall pay Licensor for this License, without notice or demand, at the Shopping Center address shown above, or such other location as Licensor may specify, by certified check, or money order or other manner approved by Licensor.

### Space Comments